We will hear argument next in No. 16-2308 Lee's Ford Dock, Inc. v. Secretary of the that we are very much interested in, in part because we have an obligation to be interested in, the issue of this Court's own jurisdiction. We are going to ask that the parties submit supplemental briefs about that question. We may later today or tomorrow issue an order defining that, or may not, but here is what we have in mind. Twenty-five pages double-spaced, government first, then Lee's Ford, two weeks for each, so government's brief due two weeks from now, your brief due two weeks thereafter. The submissions should try not to be cramped in what they consider relevant to the question of our own jurisdiction, but focus on whether we have jurisdiction. If not, what action do we take? Is it dismissal? Is it vacater? I'm thinking in particular of the 1984 Schlosser decision of this Court. The consequences of on issues such as preclusion, including perhaps the rule stated in the Supreme Court's Kirchner v. Putnam, a decision that is not subject to appeal does not have preclusive effect in a later proceeding. There is at least a potentially relevant question of election of remedies also discussed in Schlosser, whether having chosen to go the board route, there is no longer an option of going the Court of Federal Claims Tucker Act route. And then finally, but not last in significance, can Lee's Ford now sue in the Court of Federal There's an obvious limitation question that is presented, which may depend on when a Tucker Act claim begins, when it accrues. We are interested in all of those issues that are related to what the real world looks like if indeed we do not have jurisdiction here. I may and probably have left something out, but let me reiterate how we do not want to get a brief that says, you didn't ask quite this question, even though we have it in our mind that it's relevant and you'll want to know. This is a serious matter when a real claim doesn't seem, at least according to the government's position, to be within our jurisdiction and under a theory that arose, to put it mildly, rather late in the process and therefore must have surprised quite a number of people. It certainly supplies the appellant. Do you have anything at this point, and let's begin now, at this point to say about why you think we do have jurisdiction? Oh, I do, Your Honor. I think this case has already been decided. In Foreman v. United States, 767 Fed 2nd, 875 in this court, is where I'm going to quote, it is now well established in decisions of this court and boards that a leasehold interest in real property is not in and of itself real property, but personal property. Right, so here's a potential problem with Foreman, and I realize since we've just asked for briefs, and please don't wait for an order from this court, we may not issue one, so the schedule that I set out before you should take as controlling from this moment. A possible problem with the analogy to Foreman is the direction of the leasehold transfer. The government acquired, or let's use the CDA term, procured a leasehold interest. Here, the government was transferring away from itself a leasehold interest. The CDA talks about procurement. I do, and Your Honor, there are board cases that deal with that, and we will be citing them to the court. Board cases are not binding. I understand that, Your Honor. And there is at least a fairly, as these things go, elaborate D.C. Circuit decision on concession contracts. That dealt with National Park Service contracts, and I don't think that's particularly applicable to this situation. Well, except that it made an express interpretation of the Contract Disputes Act in pretty definitive terms. In response to a regulation where the Park Service said it was not covered by the... So aside from Foreman, so we have a government-owned land that the government wants to put to the public's use by leasing it out to firms like yours to provide services to the public. Yes, Your Honor. How does that come within the CDA language? And if it doesn't, is it clear that we do not have jurisdiction, even if the board would have CDA jurisdiction? Well, we will be saying, Your Honor, how under the terms of the lease, this was the procurement of services, and it was in fact the procurement of construction as well. Now, I think going into it here may be premature since it is going to be covered in additional briefing, but I have no question that this court has jurisdiction over this case. Do you happen to know when the buildings that you all built under your contract were built? And when your lease comes to an end, do those go to the government? No, they must be removed. Are you looking at, like, the restoration clause? I believe it's the restoration clause, yes, Your Honor. What about when you say that there was supposed to be recreational development? Are you relying on the clause that's under 5, use and development of the premises? I think it is 5A. Lease shall provide facilities and activities in accordance with the use and development plan. The use and development plan, unfortunately, is not in the record, but we will have to supplement that. And it does provide for continued maintenance and repair, replacement of boat slips for certain docks. So they also require that the lessee provide waste disposal services. So it does fit in with the procurement of services, construction, repair, and maintenance. I think that there are many, many reasons upon which CDA jurisdiction does apply, and we'll cover all that in the briefing. So there's another kind of jurisdiction at issue here, as you know. Oh, yes, Your Honor. The board's jurisdiction over your, I guess you call it the reformation claim, they call it the misrepresentation claim. That's why we have courts like your own here. Well, you see, reformation can rest on two different kinds of underlying facts. Absolutely, Your Honor. One is you were both under the same mistaken assumption. The other is you were, but they weren't, and they should have told you, right? I couldn't have said that better. And you're making a, they should, they knew and should have told you. Yes. So, and the gist of their dispute, their argument that the board didn't have jurisdiction over that is that you never said to the contracting officer, they knew and didn't tell us. Correct. And indeed, that was the ground on which your originally pled superior knowledge claim was dismissed by the board, right? Well, somewhat, Your Honor, somewhat. I think that the issue of... The original claim was sort of like a frustration of purpose. Well, the original... The original claim to the contracting officer. The original claim had everything in it but the kitchen sink, Your Honor. It almost seemed to have everything in it but what you needed. Well... It must have been the kitchen sink, right? Well, let's just say that they had other counsel at that point. What we put in front of the contracting officer was a statement that we were essentially arguing a mutual mistake. Both parties, I think the phraseology in the long-term turned a drawdown of the lake. Now, by doing that, as Your Honor said, mutual reformation, there are two branches. It turns on the knowledge of the parties at the time of contracting. Where both parties are ignorant, we have a mutual mistake situation. And that's what my client thought or ultimately that's what we put in the claim letter. However, what developed is that we had a situation where while Lise Ford was ignorant, we have come to learn that the government was non-ignorant of a number of facts relative to the situation, the status of the dam at the time we entered the contract. Did you have this... Correct my recollection if it's wrong. I thought that the... Of the evidence on which you rely to assert that the government knew that the dam was in bad enough shape that some serious repair was going to be needed with consequences for the level of the water was the 2007 memorandum. That's correct, Your Honor. Did you have that before you submitted your claim to the contracting officer? I thought you did. I believe that they may have. Yes, Your Honor. So it seems to me at least as a general matter, you would have had a better argument justification for not presenting a... They knew something important and didn't tell us if you didn't discover the key evidence about what they knew. I think that's true, Your Honor, but the claim letter is what the claim letter is. We believe that we put reformation squarely in front of the contracting officer. It may have been indicative of reformation due to mutual mistake, but in order to do that, the contracting officer had to look at the intent of the parties, both of them, at the time of the contract. How much did they know and how much did each party know at the time it entered into the contract? If it had done that, the issue of, as I said, of the government's knowledge would have been forthcoming, and the true issue in this case would have been before this contracting officer just as much as it is before this court at this time. So you think that this is distinguished from the superior knowledge claim, which the board found is not before it? Superior knowledge is a duty that the court... Sure, Your Honor. I'm sorry. I don't want to talk about something that doesn't even relate to my question. Okay. Okay. So my question is, do you think that by referring to reformation generally, that was enough to get over the hump, whereas superior knowledge was something that there were no operative facts or even mention of a superior knowledge claim? I do, Your Honor. I very much do, because we have put the contracting officer clearly on notice under the broad rubric of reformation that that's what we wanted. We may have not... I'm looking back to the Scott decision of this court. I think we have the same operative facts as in Scott. I think that we're claiming the same essential relief, and I think what we have here is merely the assertion of different legal theories, subsets of the reformation, as Your Honor pointed out. So I do think that we meet the same claim test as laid out in Scott. As Your Honor will recall, Scott said that what we don't need, and the standard does not require rigid adherence to the exact language or structure of the original claim. And I think if you take that language, then we clearly fall within the Scott rubric, and this court does have jurisdiction. When you say you seek reformation, what specifically should the reformed contract look like? The contract should look like that the government does indeed have authority to draw down the level of the water for reasonable periods to conduct routine maintenance of the dam. What it doesn't have is the right to draw down the level of the lake for seven years to reconstruct the dam. That's what we believe the reformation should look like, Your Honor. Can I say two questions, please? Just getting back a little bit to the jurisdictional question. First of all, I guess this question relates both to what you were discussing with Presiding Judge Toronto, and also maybe with respect to what you've just been talking about. In its July 23, 2014 decision, the board said it had jurisdiction for two reasons. One, the issue presented arose under the disputes clause, and two, there was CDA jurisdiction. Yes. Okay. I assume that the only one we have to worry about here is CDA jurisdiction. That's correct. As I understand it, that disputes clause jurisdiction to which the board referred is simply its jurisdiction to adjudicate the meaning of a contract provision. We don't have to worry about in this case. Is that correct? I would agree with Your Honor on that, yes. As Your Honor would also note, there was a comment in that decision that said, since this is a lease, that the board did in fact have CDA jurisdiction on that basis as well. So this, while the government says they had an epiphany last Thursday, actually that came out in the July 23 decision of the board several years ago. One thing I would urge, and I'd say the same thing to the parties is, in the supplemental briefing, please provide us with any and all documents in their entirety that are needed to determine this. Because one of the things that was a little bit frustrating was the fact that the portion of the July 23, 2014 decision, which explains the reason the board felt it had jurisdiction, was not included in the joint appendix. And it was frustrating to me to go back and read that, because all of a sudden at the 13th hour, we said we needed those pages that we thought would just expand the appendix unnecessarily. Your Honor, I want to put one point... Getting more to the jurisdictional question you were discussing with Judge Stoll about how you expected that there would just be routine maintenance. What would have been the situation if in the year 2000, they signed the lease, everything's going along fine. Then in the year 2003, there's an earthquake. And the effect of the earthquake is to not make the dam fail, but create problems so that immediate restoration is required that's going to take time and be expensive. How would that be handled? I think, Your Honor... What would happen there? I think that we are not claiming that the government has no rights to come in and repair the dam. But in that instance, there would be an intervening factor, clearly an intervening factor, which would obviate things and perhaps lease forward would not have a compensable claim there. What we're talking about, Your Honor, is the regular running of the dam. We had a dam that was substantially reconstructed in the late 70s. The Corps did not tell us, did not tell anyone, that the seepage cutoff wall, which was intended to stop seepage through the dam, was only partially constructed. The government says, oh, it went as far as we wanted. But as Your Honor will see on page 23 of our brief, there's an illustration, there were 1,700 feet of the face of the dam that this cutoff wall did not cover. No one knew that. We didn't know that. Seepage started reoccurring. We got higher piezometric readings from the 80s right up through 2000. There was leakage. There was seepage due to cracking in the tunnel. We didn't get told about that. Our experts said, you take those factors together and you have a dam that has serious problems. They didn't tell us anything. They just let us go ahead, expand on our investment in the property, and lo and behold come along thereafter and said, oh, the dam must be shut down. It may collapse in five hours. We're going to shut you down for seven years to totally reconstruct the dam. They say, oh, that's good faith. We didn't have to tell you. That's fair dealings. We think not, Your Honors. I'd like to reserve the remaining portion of my time. You'll get five minutes of rebuttal back. Thank you. Ms. Thomas. Thank you, Your Honor. I may have pleased the court. As an initial matter, I apologize to the court for the lateness with which we brought the jurisdictional issue to the court's attention and to the attention of Lee's board. We apologize for any disruption that that caused the court's proceedings or to Lee's board's preparation. But the fact remains that it is a serious and unwaverable question and the court, we believe, does not possess jurisdiction to entertain Lee's board's appeal. That is because the lease or concessions contract in question is not a CDA contract. The CDA applies to contracts by the government for the procurement of property or services for the direct benefit and use of the government. What about the provision, the last provision of 7102A, is it? Forward says, contract for the disposal of personal property. Yes, Your Honor. And there have been some rather lightly reasoned board decisions which suggested that the issuance of a leasehold interest by the government might be considered the disposal of personal property. And I have not researched this, but I seem to remember from what I'll call the dark ages that there were some CDA cases, correct me if I'm wrong, and this is something obviously that will be explored in the supplemental briefing, where the government would enter into a contract for disposal by it, the government, of surplus used property that it had. I assume you would say that that kind of a situation falls under 7102A4. Yes, Your Honor. And that's covered by the CDA, but you're saying a lease, as which is what we have here, even though there's that language in Foreman that refers to a lease as personal property, isn't covered. Is that what you would Yes, Your Honor. In fact, the legislative history of the CDA indicates that 7102A4 is intended to refer to surplus sales of exactly the type that you were describing. And generally speaking, historically, personal property has been used as a term in contrast and as a distinguishing term from real property, which is the type of property interest we would typically consider. Let me ask you just, and I apologize for interrupting in the middle of your sentence, but you know, we only have limited time, and this again will all be explored, but just a couple of things. Assume for the moment that Mr. Saltman could get over this hurdle of the lease. I assume the government would still be saying, okay, let's assume for the moment that the lease is an item of personal property, but what we have here is an item of personal property which is really tied to a concession. I'm trying to parse a little bit what you said in your letter. Certainly, Your Honor. See what I'm saying? Yes, Your Honor. Even if he could show a lease was personal property and there was disposal of personal property, would you still be saying that there's a problem here because we're talking about a concession situation? Right, Your Honor. It's unlikely that if the court held that the making of a lease pursuant to which the government is less or a disposal of personal property, which we don't think this language of statute can bear, it's unlikely that we would argue that nevertheless the fact that there was this additional concessions element to it would take it outside of the realm of the CDA. So you're saying at this point without a firm commitment that it really maybe turns on, in your view, and you'd have reserving anything you'd want to say in the supplemental briefing, that it turns on whether a lease can be classified as an item of personal property. Whether, well, and whether the grant release can be considered the disposal of personal property. That's right. It's the grant of the leasehold interest. They're not actually transferring the lease to anybody. They're entering into a contract called a lease that disposes of a certain right to use for a certain amount of time. Right. Although, again, we wouldn't agree that disposed would be the appropriate term to use for the transaction. But I think it's... Can I just ask, do you think that we ought to, in trying to interpret these statutory provisions, take account of the, I don't know, the seemingly surprising nature of the consequences that would befall somebody with a legitimate contract claim that either they've just mistakenly gone to the board when they should have gone to the Court of Federal Claims, and maybe or maybe not it's too late to go to the Court of Federal Claims, or that there are some claims that you just don't get to go to Article III, get Article III review, and that seems a surprising consequence? First of all, you're in the, generally speaking, and I can't at this point think of any exceptions, all of these, all concession contracts of the nature of the one described here would fall within the Tucker Act, which means that the contractor who is a party to this lease would be able to go to the Court of Federal Claims in any instance, assuming that other jurisdictional requirements were met, and have their claim decided by that court and then reviewed upon appeal by this court. Do you, I mean, do you happen to remember from legislative history of the Contract Disputes Act and Congress's action whether Congress made a kind of eyes-open judgment that the boards will have jurisdiction to hear contract claims, but as to some of those claims, there just wasn't going to be any Article III review. The board was actually going to be final on some matters that the board, that Congress understood were going to be within the court's, the board's purview, but its decisions on those matters were going to be unreviewable. Well, certainly Congress knows that there are some categories of contracts that go before the board pursuant to statutory provisions other than the CDA, and then are decided by the board and cannot be reviewed by this court because they are, because this court's jurisdiction derives only from the CDA to review board decisions, and there have been several cases in this court's there are review of certain transportation contracts that are, that are, is permitted before the board's pursuant to a statutory enactment that does not allow appeal to this court. I had one of those last year. Exactly, Your Honor. So it's certainly something that Congress has contemplated and is allowed to occur. When, when you say Congress has contemplated, certainly is this all kind of just by inference since these matters have been out there, or I guess I'm asking a kind of a legislative history question. Is there evidence from people within Congress saying things, saying we understand the board gets to do things on which they're going to be final and there shall be no judicial review unless the, the, and, and the solution to that is just bypass the board, forget about the board, fill up the Court of Federal Claims with these matters. I don't know the answer to that question as to what the legislative set, history says. I, I will say that the board's jurisdiction over, in this case for example, the board asserted that it had jurisdiction both under the CDA and pursuant to the Contracts Disputes Clause. The board's charter says that it has jurisdiction not only on contracts that are covered by the CDA but also, and I'm quoting from his charter, pursuant to provisions of contracts requiring the decision by the Secretary of Defense or by Secretary of Military Department or their duly author's representative. So in other words, pursuant to the Disputes Clause. As to where the authority came from for the board to assert that jurisdiction, that I'm not clear on. But that's, that's a sort of ancillary question as to whether the board in fact has the statutory or otherwise authority to hear those cases. So whether Congress is aware that it exercises this authority and that there is no right of appeal from it, I don't know. So just to follow up one thing, I think you came out in your discussion with Judge Toronto. I guess you would say that if back in, whenever the contracting officer handed down the decision, if at that point, having had his claim rejected, Lees-Ford Dock had brought an action under the Tucker Act in the Court of Federal Claims, we would not be here today discussing this jurisdictional question that's now before us. Is that correct? That is correct, except for one issue, which is that Lees-Ford Dock waited to submit its claim until the very day before six years had passed since the claim accrued, which means that the statute of limitations for the Tucker Act would have run before it could bring its suit in the Court of Federal Claims. But leaving aside that particular circumstance in general, when a contractor pursuant to a concessions contract receives an adverse decision from a contracting officer, yes, they can go straight to the Court of Federal Claims instead of going to the board. So would the period to go to the Court of Federal Claims in that case have run from the time that Lees-Ford Dock saw they were encountering a big delay, or would it have run from the time that it went to the contracting officer and said, please, here's the problem, pay us? I believe under the Tucker Act, the statute of limitations begins running as soon as the contractor is aware of the injury that has occurred to it. So we would say that it started running in 2007 when the court announced that it would be lowering the reservoir level for an extended period of time. We recognize that the particular circumstances of this case and the possibility that in this case there may be no review of the board's decision available from an attorney, but there is no way to equitably create jurisdiction where it hasn't been conferred by statutes. How do you respond to what I understood Mr. Saltzman to be saying earlier? Earlier I heard him to be relying on 7102A3. What's your response to that? 7102A3? The procurement of construction, alteration, repair, and maintenance of real property. So the use and development plan of Lease-Ford, which while it's not included in the joint appendix, is included as Exhibit C to the amicus brief, which is I think the first time I've ever referred to an exhibit filed by an amicus, but it is included in that filing. And that use and development plan says that Lease-Ford shall maintain the property that's already on the tract that leases and all of that property, the fixtures belong to Lease-Ford itself, and that it will each year invest in some modest new improvements such as an addition of boat slits to its marina. I believe that's probably what my friend was referring to. The problem with that is that the services rendered in that case are not for the direct benefit or use of the government, rather they're for the use of the public who patronize Lease-Ford's marina and to some extent to Lease-Ford itself, since all of the construction it engages in becomes its own property. Turning to... Was any of the construction that's required, but put aside for whose benefit, was any of the construction that was required under the contract construction, alteration, repair, or maintenance of real property? Was there any requirement of... I think I would just be repeating the words, as opposed to building... Construction of real... What is construction of real property within the meaning of this? Building land jetties? I would assume that would mean... Landfill? This isn't a subject I've researched yet, Your Honor, so it's... You have two weeks. Yes, I mean, just as an intuitive matter, it's probably referring to fixtures on real property, but in which case, I mean, Lease-Ford is required by the Use and Development Plan to build boat slips. The problem, again, there is with the benefits of that not running to the government, but rather to the public. Could Lease-Ford have just gone on this and rented the property as it did, but not have used it for a commercial marina? What if it had just gone on there and let the property sit, but the owners of Lease-Ford came there from time to time and enjoyed the acreage and the surroundings and camped there? Would that have been in violation of the lease? Yes, Your Honor, because the lease does say that the lease is made for the purpose of commercial concession purposes and that Lease-Ford's purpose in obtaining and maintaining the lease is to provide recreational services to the public, so we would consider that in violation of the lease. And I think I asked the question about what's to become... What is it? This is now a 50-year lease, is that right? Since early 70s, so... Was it 20, 25 years? 25 years. And there were requirements of constructing some things, we won't characterize what they are. Those things, should they, if they last till the end, those, what happens to those things? Do they have to take them out? Everything, including the docks? Yes, all changes that Lease-Ford makes to the property have to be reversed to restore it to its baseline. Just one final thing, I'd just say the same thing if I could to Mr. Solomon. Please, when you submit the supplemental briefing, provide us with full copies of any and all pertinent documents so that we don't, you know, run into the same problem we had in this situation. Because in addition to the July 23 decision, there were only portions of, I think, the first, the government's response, the amended complaint, and some of the summary judgment papers were not in their entirety. Yes, Your Honor, we'll make sure to give the record a more fulsome treatment in submitting supplemental material. It turns out that of the various tribunals that we review, the board is not one that we have ready electronic access to. I don't think anyone has ready access to their materials, Your Honor. Can I switch topics? Certainly. I'm not even sure we've talked about this. Sure, I just know that my time is up. I'm aware of the clock. On the reformation claim, putting aside the question whether Lee's Ford adequately preserved it by presenting it to the contracting officer, the board rejected that, if I'm remembering right, on the theory that even if you all knew of an even possibly dire condition of the dam, sufficiently dire that the water was going to be drained down to make boating, let's say, even useless, that really Lee's Ford wouldn't have cared much about that when entering into the lease. It wasn't a material premise of the lease. That's a little hard to find plausible. Yes, Your Honor, so a few things on that point. First, I want to make clear that the drawdown here didn't render Lee's Ford's marina unusable or the lake unusable to boats. So what does the record tell us about basically whether the boats could reach the docks? Lee's Ford says that it had to relocate one of its docks, but that's the extent of the issue, as far as I can tell from the record. Lee's Ford was fully operational for the years in which the drawdown was in effect, and according to the Corps' audit of Lee's Ford's operations, it was still drawing approximately four million dollars or more in revenues during the first four years after the drawdown began, approximately the same amount before. The reason that it isn't simply a matter of logical deduction to say that if Lee's Ford had known that there was a potential prolonged drawdown in the works, that it would have backed off the lease is, first, that Lee's Ford's sole line of business for its entire existence has been operating these Cumberland. It has five million dollars of assets at lease, that's the amount listed in its use and development plan, on that land, which it would have to destroy and remove if it no longer had a lease on that property. And Lee's Ford itself has never said... I'm sorry, it had the five million dollars as of the time of the entry into the 2000 lease, and you're not talking about what in turn, I think, committed to build? No, your honor, that was an improvement of approximately 250,000 dollars worth. And also, perhaps most significantly, Lee's Ford itself has never claimed in any of these proceedings that it wouldn't have entered into the lease if it had known during the negotiations of the 2000 lease that there would be a drawdown required for a few years. They declined to say that. Instead, they have said such things as, if Lee's Ford had known in 2000 that there was a long-term drawdown in the offing, it, quote, would have attached great importance to that information, end quote, in determining whether to enter into the new 25-year lease. There's no... and then they would have decided not to enter into it. Similarly... Perhaps they might have negotiated a pricing provision that said when the water is below 720 feet or something, during such time, if it lasts for more than 30 days, we shall not have to pay any rent or something. The problem with that, your honor, is that there's no evidence that such a provision could have been negotiated, and Lee's Ford has also not suggested that it would have asked for one. There simply isn't any evidence in the record to suggest that anything would have been different about the entry into the lease and the provisions of the lease, even if the alleged misrepresentation hadn't been made. That's one of the central problems with Lee's Ford's claim, along with the problem that the remedy it seeks, reformation, isn't available for the type of misrepresentation claim that it's making. Reformation is only available based upon a misrepresentation, if the misrepresentation concerns the actual terms of the written agreement the parties entered into, not if it concerns some extrinsic fact. The only remedy... I'm remembering something and I don't have my notes on this, so I thought that there was a provision of the lease that referred to a certain linear measure of water front property or something. Right, that's an argument made by Lee's Ford in its reply. It says that the lease says that they have leasehold rights in I think 130 water acres and 36 land acres. The lease doesn't actually say that. The lease says that the premises to be rented is identified in Exhibit A. It's not really clear from the record, or any record I've seen, what Exhibit A is. The only document that could arguably be it that's included with the lease is a map located on page 53 of the appendix, which shows a rough drawing of some of the land around Lake Cumberland with a cross-hatched area, presumably indicating Lee's Ford's rental property. There's a box in the upper left corner of that page that 29 acres above freeboard, 24 acres below freeboard, and 113 acres water area. The logical interpretation of that document would be that it is laying out the meets and the bounds of the property to be leased by Lee's Ford, not guaranteeing a particular volume of water. And that reading is borne out and in fact is necessitated by the exculpatory clause, which makes clear that Lee's Ford is not being guaranteed a certain volume of water. I have one question. Soon we get to the board decision. There are two claims before us. I guess the claim that was in what we call Claim 1, which is the misrepresentation claim, and then Claim 3, the breach of contract claim. Claim 2, they're not pursuing any further. Soon we were ruled for the government on Claim 1. That would still leave, though, Claim 3 to be decided, correct? The breach of contract claim. If this court were to rule for the government on jurisdictional or merits grounds as to... Well, there's two jurisdictional questions. There's the jurisdictional question, which has just been raised about whether the contracting, whether we have jurisdiction. Assuming we got over that, then we get to the board decision. We have to decide whether the board had jurisdiction over Claim 1 or Count 1, which is the superior knowledge slash misrepresentation claim, correct? Assume we agreed with the government that there was no jurisdiction there. There would still remain, would there not, the claim in Count 3 or Claim 3, which is the breach of contract claim? It would remain in the sense that this court... There would be jurisdiction. Right, to review it on the merits. That was the only thing. I just wanted to flesh that out. Yes, sir. And since I'm considerably over my time, unless there's... Why don't you try to wrap things up now? I realize you may have spent most of your time talking about things you didn't plan to, but... Sure. There's just one point I'd like to make as an indication of the extent to which the record does not support Lee's court's claim that the government knew in 2000 that the lake was in immediate danger of failing and that it would need to be drawn down for an extended period of time. Two points. The first point is that the record evidence... Before your two points, the board did not find that. It did not, Your Honor. Right, so that's the problem. That is, the argument about how you really weren't hiding the ball is just not one of the grounds on which the board rested its decision. Yes, Your Honor. And we understand if the court chooses not to reach that. If the circumstances were such that that were a decisive issue, if the court decided not to reach it in the first instance. However, I do feel on equitable grounds that I'd like just to make the point clear because it is important to the court for it to be recognized that it did not engage in the iniquitous behavior attributed to it. All of the evidence in the record indicates that the decision to draw down the lake was made in 2007 based on a series of risk reviews that were conducted. And the risk reviews conducted in 2005 were based upon extensive study and analysis of project history, previous remedial work, instrumentation, geotechnical exploration, detail analyses, consultation with experts, and engineering judgment interpreting the distress indicators, other information and data, and conditions of the project. That's from Appendix 71, all of which is to say it's not a determination you can reach just by looking at the dam. It there's no evidence that the court had engaged in that prior to 2005. Second, their claim wouldn't necessarily depend on that. Their claim wouldn't require more than the court or whoever was running the dam knew enough about a high enough probability of danger at a high enough level that seven years of lack of water to overstate things was a real possibility and that boy would they have liked to have known that. Their claim could be based on that allegation but it wouldn't be based on evidence because there still isn't evidence in the record as to what risk of failure the court knew the dam was at in 2000. Second, in its attempts to wring from the record evidence signs that the court did know in 2000, Lee's board engages in some rather creative... I think I'm going to actually cut you off on this because this wasn't a board decision and at least speaking for me, I think I get the point. And thank you very much for rolling in all the directions that we've taken you to. And again, I apologize for our late coming to this issue. Mr. Saltman, five minutes please. That was a very interesting dialogue. First of all, I can't believe that the government actually used the term that they need equity here because something happened in 2007. We put a lot of evidence on the table, as your honor well said, that there was enough information in 2000 that they knew there were serious problems with the dam. They didn't tell anybody. They kept it to themselves. They let us go blindly forward, make additional investment in the property only to take seven years away from the contract. What was the evidence that you put before the board? First of all, was this done on summary might have done or tried to do differently? Had you known of the kind of risk level that you accuse the core of knowing? Well, I think that that would have changed things markedly. The client would then have had to say, look, we're going to go forward. They are going to once again seriously reconstruct this dam. It is going to greatly interrupt us. How are we going to deal with them? Are we going to deal with them? Do we want to sit there for seven years with our business totally ruined? Right, but specifically in terms of, excuse me, I'm going to ask you this, of evidence before the board, but one quick detour. As to what they would have done? Right, well, one quick detour. What evidence was there about ability of boats to get to your docks when the water was down? I was under the impression, which I think Ms. Thomas indicated was a misimpression, that the boats couldn't get to your docks for a long time because the water was too low. The evidence, I don't think there's a substantial amount of it, but the fact is that the boats had great difficulty getting to our docks. We did have to move a dock at a cost of about a million dollars to increase the ability to utilize what water we had, but it was not business as usual in any sense, Your Honor. What evidence was there? I'm sorry? What evidence was there? I heard you mention the fact that there had to be something, one of the docks had to be moved. I am, I'm not sure that I can point to anything with great specificity other than the fact that we did have to move the dock to allow, I think it was 48 slips, to have any access to any water. That was a detour, I took you on, so back to the question of what evidence did you put in front of the board that you would or might have done something different had you known of the risk level that you say the court, the court knew? The declaration that we had that said if we had known this, it would have changed the game and we would have had to seriously consider what we Is this Mr. Hamilton? Yes, one of Mr. Hamilton's statements, yes. Your Honor, while we look for that, can I go on for just a moment? Yes, please. The government talks about, they didn't know how many acres they leased to us. The lease at Appendix 56 is very specific, 160 water acres and 36 land acres. They took away most of those 160 water acres and they admit that there is no exculpatory clause that applies to that. They say if we don't deliver what we promised you in terms of acreage, we're liable. Count two, they're liable. They didn't deliver it. There was also some discussion about a $5 million investment as of 2000. That's incorrect. The $5 million is in the use and development plan and it is the total proposed development after 2004, adding these additional slips, replacing slips, so there was major construction anticipated after 2000. There is no evidence in the record as to the value of the assets that Lease Forward had or whether or not they were fully depreciated at that time. Can I ask you this question? This is several assumptions, so I want to, for this purpose, take as an assumption that we have jurisdiction. Also take as an assumption, less happy assumption, that the board did not have jurisdiction over your reformation claim. So what you're left with is claim three, breach. And as I read your briefs, you think that the exculpatory clause needs to be read to contain an implied limitation that drawdown of water must be Yes, but the government, if you'll pardon the word, trumped that. Because in their last brief, they said, the exculpatory clause doesn't apply to our failure to give you acreage that we promised. 160 water acres was promised. I'm sorry, what are you relying on? It's in the government's last brief. It's in the government's brief. The red brief? Yes. Can you read it specifically? Government's brief at 35. The government says it does not have an unlimited method for exculpating itself from that promise to provide those tracts to Lease Forward. That's the 160 water acres and the 36 land acres. I suppose it would mean, it would depend on what you meant, what they meant by the tracts, dry tracts or wet tracts. Well, I think we got mud tracts, not water tracts. Because if, I guess what I came in thinking, well, suppose you're right that the exculpatory clause had an implicit limitation that any drawdown of water had to be reasonable. I don't remember seeing evidence that the Corps was actually unreasonable in drawing down the water. They were not unreasonable in drawing down the water. They were unreasonable in not telling us that the dam was in bad shape. That's really the first. When the dam is in terrible shape, yes, they must draw down the water. We're not suggesting that they have to keep it high for us and risk the dam failure. Your Honor, this really should be the last thing. Okay, but you got into a discussion with counsel and she said the services here that was required by the lease document weren't for the benefit of the government. But there are CDA cases and unfortunately I can't cite them off the top of my head. But they provide that the services don't always have to flow to the government to be a CDA contract. And I'm thinking of contracts such as to provide cable TV on military bases. That is a CDA contract even though the service does not flow directly to the government. And payment ultimately for that service comes from individuals and not the government. We will cite that back to Your Honor. Thank you all.